# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| NICOLE AMES, *Administrator of the Estate of Nicholas Eaton, and NICOLE AMES, mother and next friend of R.R.E.A. a minor child*, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 07-cv-4068 |
| | ) | |
| THE ROCK ISLAND BOAT CLUB, and TRI-COVE LTD d/b/a TRIANGLE INN, | ) ) ) | |
| Defendants. | ) ) | |
| | | |
| VICKY ZAHN, *Administrator of the Estate of Christopher Rector, and VICKY ZAHN, Individually*, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TRI-COVE, LTD d/b/a TRIANGLE INN, | ) ) | |
| Defendant, | ) ) | Case No.  07-cv-4071 |
| and | ) ) | |
| TRI-COVE, LTD d/b/a TRIANGLE INN, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| THE ROCK ISLAND BOAT CLUB, | ) ) | |
| Third-Party Defendant. | ) ) | |

JOHN S. HEBERT and ARRON M.    )
SHEE,                           )
                               )
   Plaintiffs,              )
                               )
     v.                  )       Case No.  09-cv-4026
                               )
THE ROCK ISLAND BOAT CLUB, and   )
TRI-COVE LTD d/b/a TRIANGLE INN,  )
                               )
   Defendants.           )

# O R D E R  &  O P I N I O N

     This matter is before the Court on Plaintiffs' joint Motion in Limine (Doc. 102), Defendant Rock Island Boat Club's Amended Motion in Limine, which Defendant Tri-Cove joins (Doc. 101), and Defendant Tri-Cove's Motion in Limine, which Defendant Rock Island Boat Club joins (Doc. 103).  Defendant Rock Island Boat Club also moved to withdraw item #7 from its earlier Motion in Limine.  (Doc. 109).  This request is denied as moot, as the item related to Plaintiff's Zahn's attorney; Plaintiff Zahn has now settled her claims against both Defendants. (8/9/10 Text Order).  As explained further below, the other motions in limine are granted in part and denied in part.

## PLAINTIFFS' MOTION IN LIMINE

     Plaintiffs ask the Court to order that Defendants, Defendants' counsel, and any witnesses not make any direct or indirect mention of several facts before the

jury without having first obtained the permission of the Court outside of the jury's presence:[1]

1.     The settlement of the Plaintiffs' claim with State Farm Insurance, the insurer of the vehicle driven by Matthew Irwin.  Defendant Rock Island Boat Club has no objection, and the request therefore is granted.

2.     The release of the Rock Island Boat Club from liability to Plaintiff Zahn, which Plaintiffs argue is not relevant.  As Plaintiff Zahn's claims have been settled, this request is denied as moot.

3.-7.   The notices of the dram shop action to other dram shops, which were sent within six months of the accident and prior to discovery; Plaintiffs argue that these notices are not relevant.  Defendant Rock Island Boat Club contends that the notices are relevant, stating that "[t]he evidence of the four dram shop notices makes it more probable that the Plaintiffs do not know where Matthew Irwin was even drinking the night of the incident," and "provide the background evidence and show a chronology of events by the Plaintiffs," in that they "show the Plaintiffs gave dram shop notices to several establishments in an attempt to try and figure out where Matthew Irwin was even drinking on the date of the incident."  (Doc. 108 at 4).

Though the standard for relevance under Federal Rule of Evidence 401 is broad, the Court does not find that the fact that Plaintiffs did not know, within six

---

[1]     Only Defendant Rock Island Boat Club has responded in opposition to Plaintiffs' Motion in Limine.  (Doc. 108).  The Court therefore presumes, under Local Rule 7.1(B)(2), that Defendant Tri-Cove has no objection to any part of Plaintiffs' Motion in Limine.

months of the accident and prior to the initiation of discovery, precisely where Matthew Irwin, who was presumeably a stranger to them, would have been drinking on the night of the accident, to be relevant to any fact at issue in this case. The notices are required as an initial step under Iowa's dram shop law.  I.C.A. § 123.93.  Yes, they show that Plaintiffs were not initially sure of where Irwin was drinking on the night of April 28 and 29, 2007, but the fact that Plaintiffs needed to investigate where Irwin might have been drinking that night does not make any fact at issue more or less probable - it does not make it more or less likely that Defendants served Irwin alcohol in violation of the dram shop statute, but merely shows that Plaintiffs, who did not know Irwin previously, did not know without investigation and discovery where he drank.  Plaintiffs' request is granted.

### ROCK ISLAND BOAT CLUB'S AMENDED MOTION IN LIMINE

The Rock Island Boat Club requests that the Court prevent Plaintiffs, Defendants, Plaintiffs' or Defendants' counsel, and Plaintiffs' or Defendants' witnesses from commenting on certain matters:[2]

---

[2]     The Rock Island Boat Club's first Motion in Limine was based on Illinois law. (Doc. 100).  After the Court reminded the parties that the Federal Rules of Evidence are applicable to this case, The Rock Island Boat Club filed the instant Amended Motion in Limine.  Tri-Cove also joins in The Rock Island Boat Club's Motion in Limine.  (Doc. 103 at 4).

Only Plaintiffs Zahn and Ames responded in opposition to the Rock Island Boat Club's Motion in Limine; though Plaintiff Zahn has settled her claims with both Defendants, Plaintiff Ames joined in her Response to the Rock Island Boat Club's Motion in Limine, so the Court will still consider Plaintiff Zahn's Response as supplementing the Response of Plaintiff Ames.  (Docs. 107 & 113).  The Court presumes, under Local Rule 7.1(B)(2), that Plaintiffs Hebert and Shee have no objection to any part of the Rock Island Boat Club's Motion in Limine.

1.      The existence or nonexistence and payment or nonpayment of insurance for any party, relying on Federal Rule of Evidence 411.  Plaintiffs have no objection; this request is granted.

2.      With the exception of evidence regarding the release between Plaintiff Zahn and the Rock Island Boat Club, any settlement negotiations, compromises, offers, or demands, under Federal Rule of Evidence 408.  Plaintiffs have no objection; this request is granted insofar as it excludes evidence of any settlement negotiations, compromises, offers, or demands.  Insofar as it seeks to admit evidence of Plaintiff's Zahn's release of liability with the Rock Island Boat Club, the request is denied as moot.

3.      The financial status of any party or the relative wealth of the parties, under Federal Rules of Evidence 401 and 402 and *Adams Labs, Inc. v. Jacobs Eng'g Co., Inc.*, 761 F.2d 1218, 1226 (7th Cir. 1985).  Plaintiffs have no objection; this request is granted.

4.      Statutes, rules, or regulations, unless the Court specifically rules on their admissibility and applicability.  The Rock Island Boat Club does not specify what statutes, rules, or regulations it refers to, and does not cite any authority for preventing reference to any statutes, rules, or regulations.  As pointed out by Plaintiff, the Iowa dram shop act is the basis of this case, and the jury must be instructed as to its requirements; there is no reason the Court can discern to prevent the parties' referring to the dram shop act.  In addition, within the parties' "Stipulation of Uncontested Facts," the parties have already stipulated to Matthew

Irwin's convictions for vehicular homicide and for serious injury by vehicle under Iowa statutes. As these facts have been stipulated, there is again no basis by which Defendants can now assert that Plaintiffs should be barred from referring to them. This request is denied.

5.     Opinions by Plaintiffs Hebert and Shee as to their medical conditions, except for testimony as to their own symptoms. Plaintiffs have no objection; this request is granted. Moreover, as damages are not at issue at this phase of the trial, the Court cannot see how any testimony as to the Plaintiffs' medical conditions, whether offered by the Plaintiffs themselves or by their physicians, would be relevant during this phase.

6.     Opinions from Plaintiffs' expert, M.L. Rehberg, as to whether Matthew Irwin was visibly intoxicated or appeared intoxicated while a patron at the Rock Island Boat Club (and the Triangle Inn, as Tri-Cove has joined the Rock Island Boat Club's Motion in Limine) under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Defendants argue that

> Mr. Rehberg may provide opinions regarding the blood alcohol level of Matthew Irwin at 5:00 a.m. on April 29, 2007 when the test was taken and opinions as to what the level most likely was a few hours earlier at the time of the accident, [but] he should be precluded from providing testimony regarding effects of alcohol (and the visibility of the same) at the bars at issue.

(Doc. 101 at 5). They argue that this is so because there is no evidence as to how many drinks Irwin had at either dram shop, and so his opinions are based on speculation. There are two theoretical components to Mr. Rehberg's testimony: (1)

that he can extrapolate from a later blood alcohol test to determine a subject's earlier blood alcohol level, and (2) that he can describe a subject's appearance or behavior when under the influence of a given amount of alcohol.

In support of Mr. Rehberg's testimony, Plaintiffs point to Mr. Rehberg's curriculum vitae and the scientific publications on which he relied in formulating his opinions, as well as the fact that, in formulating his opinions, Mr. Rehberg relied on Irwin's sworn statement about the times and places he consumed alcohol. (Doc. 107, Ex. 2). Mr. Rehberg did know when and where Irwin consumed alcohol, and that he consumed alcohol at both Defendants' dram shops. In his sworn statement, Irwin stated that he began drinking alcohol at noon, that he only drank at the Rock Island Boat Club and Triangle Inn, and that he spent about $45 over the course of the night.[3] Irwin was at the Rock Island Boat Club from noon until 5:00 or 6:00 P.M., drinking beer, wine, and Jim Beam (the beer and wine were free, and he paid for the Jim Beam), and he was at the Triangle Inn from around 8:00 P.M. to 12:30 A.M., drinking Jim Beam he paid for himself. (Doc. 107, Ex. 3). In his

---

[3]     Plaintiffs presented the deposition of Kristen Lingner, a Triangle Inn bartender, indicating that mixed drinks at the Triangle Inn were about $2.25 in April 2007. Plaintiffs attempted to calculate from this and the fact that Irwin spent about $45 that he bought about nineteen drinks over the course of the evening. However, as Plaintiffs presented no evidence as to the prices of mixed drinks at the Rock Island Boat Club, this calculation is unreliable; if drinks at the Rock Island Boat Club were (hypothetically) $10 each, and he bought several drinks there, this would drastically reduce the amount of cash left for purchases at the Triangle Inn. No matter how much each drink cost, in addition, there is no way to determine from this information how much he had at each bar. Moreover, this calculation, such as it is, could not have formed part of the basis for Mr. Rehberg's opinions challenged by Defendants, as the Lingner deposition was not taken until July 29, 2010, and Mr. Rehberg's report was last reviewed and reaffirmed by him December 8, 2009. (Doc. 107, Ex. 4; Doc. 113, Ex. 1).

Deposition, Irwin confirmed that his statements in the sworn statement were true; Mr. Rehberg reviewed the deposition, and found no information that led him to change his previous opinion.  (Doc. 113, Ex. 1).  Though Irwin declined during his sworn statement and deposition to state an exact number of drinks he consumed, as his criminal trial and sentencing were still pending, he stated that he would so testify after his criminal trial and sentencing were completed.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Pursuant to the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the trial judge must serve as the Rule 702 "gatekeeper," ensuring that expert testimony presented to the jury is reliable and that it will assist the trier of fact.  509 U.S. 579, 589 (1993).  There is no doubt here that testimony as to both Irwin's level of intoxication and his resulting appearance or behavior at the times he was at the Defendants' dram shops would assist the jury in determining whether the dram shops knew or should have known that he was or would become intoxicated; the question here is whether the testimony is reliable.

"The Supreme Court has identified the following factors as pertinent to this inquiry [into the reliabililty of a principle or method]: (1) whether the theory has

been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010) (*citing Daubert*, 509 U.S. at 593-94); *see also Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 613 (7th Cir. 1993). The crux of Defendants' argument is that Mr. Rehberg's opinions are based on insufficient facts or data, or that he has unreliably applied the available facts to his theory, not that the theory itself is flawed.[4]  Indeed, Mr. Rehberg's theories that one can extrapolate from a blood alohol level at one point in time to the level at an earlier point in time, and that he can describe a person's appearance and behavior resulting from the consumption of a given amount of alcohol, appear from Mr. Rehberg's affidavit to be tested, subjected to peer review, and accepted in the relevant scientific community.[5]  (Doc. 107, Ex. 2).  Though it is Plaintiffs' burden to show that their expert's testimony is reliable, Plaintiffs have submitted evidence, in the form of Mr. Rehberg's affidavit, indicating that the two theories are reliable,

----

[4]     Defendants do argue that "the theory that one can opine as to the appearance of someone's intoxication without knowing when, what, and where the alcohol was consumed" has not been tested or subjected to peer review.   (Doc. 101 at 7-8).  However, they concede that Mr. Rehberg can reliably testify about Irwin's level of intoxication (and presumeably the visibility thereof) at the time the test was taken and for a few hours prior to the test, indicating that the theories about extrapolation of blood alcohol level and ability to describe a person's appearance or behavior resulting from a certain amount of alcohol are not themselves the subject of their complaint, but only the factual basis for their application by Mr. Rehberg further back into the day.

[5]     Mr. Rehberg's affidavit also indicates an error rate, but this cited error rate pertains to the accuracy of physical blood alcohol testing, not to the method of extrapolating from a given blood alcohol level to determine the blood alcohol level and its effect at an earlier time.

and Defendants have given no reason to doubt the Plaintiff's evidence.  Thus, the Court finds that the theories themselves are reliable enough to pass muster under *Daubert*, if properly executed.

The real questions are therefore whether Mr. Rehberg has sufficient facts to which to apply his theories, and whether he does so reliably.  Defendants argue that he does not, as he does not know how many drinks Irwin had at each dram shop. Plaintiffs argue that he does, as he knows that Irwin drank only at the two dram shops, when Irwin was at each of the dram shops, and that Irwin spent about $45 on drinks, which does not include the free beer and wine he had at the Rock Island Boat Club.  Mr. Rehberg's affidavit implies that this is sufficient information to which to apply his theory to extrapolate Irwin's level of intoxication at the dram shops, and that his reliance on this type of information is well-accepted in the relevant scientific community.

However, the Court has significant doubts about Mr. Rehberg's ability to extrapolate, on the information he currently has, as to Irwin's blood alcohol level many hours prior to the blood alcohol test being administered; it is just too big of a jump to say that a person was intoxicated 11-17 hours before testing with a given blood alcohol level when one only know what time he had first drink and his blood alcohol level 17 hours later.  (Doc. 101 at 4).  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (*citing Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district

court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Mr. Rehberg's own affidavit, which does not explain this logical leap, is not sufficient to show that this application of the first part of the theory to the given facts is reliable.

At this point, Mr. Rehberg only knows that Irwin had some number of drinks at the Rock Island Boat Club, and that, 11-12 hours after leaving there (and after which he had more drinks at the Triangle Inn), he had a blood alcohol level of .199. On these facts, for instance, it is possible that Irwin had only a few drinks early in the afternoon at the Rock Island Boat Club, which did not render him visibly intoxicated, that he completely sobered up by 8:00 P.M. (when he went to the Triangle Inn), and that he drank enough at the Triangle Inn to result in the blood alcohol level measured at 5:00 A.M. This scenario would result in a finding of no liability for the Rock Island Boat Club, as there would be no way that it knew or should have known that Irwin was or would become intoxicated, but it is not accounted for in Mr. Rehberg's opinion that Irwin was visibly intoxicated throughout his time at the Rock Island Boat Club. Therefore, Mr. Rehberg's testimony extrapolating from the 5:00 A.M. blood alcohol test back to determine Irwin's previous afternoon and evening blood alcohol levels at the two dram shops must be excluded, as it does not reliably apply the theory to the facts at hand.

On the other hand, the Court finds that, if Mr. Rehberg, who has the necessary qualifications to render such an opinion, hears testimony from Irwin

about how many drinks he had at each dram shop, he will have sufficient data on which to formulate a reliable opinion about Irwin's appearance and behavior at each dram shop. Therefore, Mr. Rehberg's opinion, insofar as it is based on extrapolation from Irwin's 5:00 a.m. blood alcohol level, as to Irwin's blood alcohol level when he was at Defendants' dram shops, is excluded. However, if Irwin testifies as to the number of drinks he had at each dram shop, Mr. Rehberg may opine, based on Irwin's testimony, as to Irwin's resulting appearance and behavior at Defendants' dram shops.

### TRI-COVE'S MOTION IN LIMINE

Defendant Tri-Cove requests that the Court order Plaintiffs' counsel, witnesses, employees, or agents from attempting to convey these points to the jury:[6]

1.      That there is or may be liability insurance for Tri-Cove that will pay Plaintiffs or indemnify Tri-Cove. Plaintiffs have no objection; this request is granted.

2.      A causal connection between medical treatment or medical bills without a treating doctor's testimony to establish a causal connection. Plaintiffs have no objection; this request is granted. Moreover, as discussed above, medical treatment and medical bills do not appear to be relevant at this phase of the trial, which concerns only liability, not damages.

---

[6]      Only Plaintiffs Zahn and Ames have responded in opposition to Defendant Tri-Cove's Motion in Limine. (Docs. 106 & 112). As noted above, Plaintiff Zahn's Response is still relevant, as it was joined by Plaintiff Ames. The Court presumes, under Local Rule 7.1(B)(2), that Plaintiffs Hebert and Shee have no objection to any part of Tri-Cove's Motion in Limine.

3.     The reasonability or necessity of medical bills or medical care without the treating doctor's testimony to establish the proper foundation.  Plaintiffs have no objection; this request is granted.  Moreover, as discussed above, medical bills and medical care do not appear to be relevant at this phase of the trial, which concerns only liability, not damages.

4.     Any testimony by Plaintiffs as to what their physicians told them about their medical condition.  Plaintiffs have no objection; this request is granted.  Moreover, as discussed above, the Plaintiffs' medical conditions do not appear to be relevant at this phase of the trial, which concerns only liability, not damages.

5.     Opinions by Plaintiffs Hebert and Shee as to their medical condition, except for facts they observed themselves, such as their physical symptoms.  Plaintiffs have no objection; this request is granted.  Moreover, as discussed above, the Plaintiffs' medical conditions do not appear to be relevant at this phase of the trial, which concerns only liability, not damages.

6.     Statements by agents, adjustors, or employees of Constitutional Casualty Company to any of the parties, their attorneys, or witnesses.  Plaintiffs have no objection; this request is granted.

7.     Tri-Cove's report of the accident to its insurance company (and, as the Rock Island Boat Club has joined Tri-Cove's Motion in Limine, the report by Rock Island Boat Club to its insurance company).  Plaintiffs have no objection; this request is granted.

8.      Attorney Skorepa's routine defense of insurance companies, practice of insurance defense, or involvement in other matters involving insurance claims, clients, or defenses (and, as the Rock Island Boat Club has joined Tri-Cove's Motion in Limine, any similar work by Attorney Levien).  Plaintiffs have no objection; this request is granted.

9.      Prior liquor violations by Tri-Cove or Triangle Inn (and, as the Rock Island Boat Club has joined Tri-Cove's Motion in Limine, by Rock Island Boat Club).  As Plaintiffs state no objection; this request is granted.

10.     Statements made by decedent Nicholas Eaton concerning his child. Plaintiff Ames has no objection insofar as the request concerns only the liability phase of the trial, but reserves the right to introduce such evidence at the damages phase, if it is necessary.  This request is therefore granted as to the liability phase of the trial.

11.     Statements made by decedent Nicholas Eaton concerning his plans for future employment.  Plaintiff Ames has no objection insofar as the request concerns only the liability phase of the trial, but reserves the right to introduce such evidence at the damages phase, if it is necessary.  This request is therefore granted as to the liability phase of the trial.

12.     Why parties' counsel made certain admissions or denials in their Responses to Requests for Admission.  Defendant Tri-Cove argues that such questions would be "irrelevant, argumentative, immaterial, and plaintiff has the burden of proof on these issues." (Doc. 103 at 4).  As pointed out by Plaintiffs, under

Federal Rule of Civil Procedure 36(b), the admissions given in response to a Request for Admission are "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." No party has requested the withdrawal or amendment of any admission. Therefore, Tri-Cove cannot be asking the Court to prohibit Plaintiffs from introducing these admissions, and cannot seriously mean to tell the Court that Plaintiffs have the burden of proving the facts thereby admitted.

Instead, Tri-Cove asks the Court to ban questions about *why* counsel made certain admissions or denials. Tri-Cove provides no authority for the proposition that such questions should be prohibited, instead, merely arguing that they are "irrelevant, argumentative, [and] immaterial." Though Tri-Cove does not indicate in what situation it believes such questions would arise, the Court assumes that it anticipates that some of its witnesses' testimony will contradict the admissions or denials made in response to the Requests to Admit, and wishes to prevent impeachment. If a party admitted or denied a fact in response to a Request to Admit, and later testifies in contradiction to that admission or denial, the party cannot complain when it is impeached by reference to that prior admission or denial; such impeachment would be highly relevant and material. However, a question to a party *about an attorney's advice* to admit or deny would risk treading upon the attorney-client privilege. Therefore, Tri-Cove's request is denied in part and granted in part. The parties are not prohibited from introducing the admissions made in response to a Request to Admit, and they are not prohibited from proper examination of a party by reference to his or her admission or denial

made in response to a Request to Admit under Federal Rule of Evidence 613, but they may not inquire as to the content of an attorney's *advice* to his or her client in regard to a Request to Admit.

13.     The pending declaratory judgment action on the parties' insurance policies.  Plaintiffs have no objection; this request is granted.

14.     Whether witnesses have been offered money, or whether any promises or threats have been made to them in regard to their testimony.  Defendant Tri-Cove asserts that this "suggests or implies that defendant or defendant's agents" have offered money, or made promises or threats to witnesses, which is "without foundation, argumentative, and calculated to harass and embarrass defendant and defendant's counsel."  Again, Tri-Cove submits no authority for the argument that Plaintiffs should be prevented from inquiring into the potential motivations of witnesses, and there is no Federal Rule of Evidence directly addressing how a party may inquire into a witness's potential bias.  It is certainly possible that some such questions would run afoul of Rules 403 or 611, and the Court will of course exercise its discretion to prevent improper questioning.  However, a blanket rule against all questions on whether witnesses have been offered money, or whether any promises or threats have been made to them in regard to their testimony appears excessive at this point.  Tri-Cove's request is denied.

15.     Opinions from Plaintiffs' expert Mr. Rehberg as to whether Matthew Irwin was visibly intoxicated while a patron at the Triangle Inn.  Tri-Cove adopts and joins in the arguments made by the Rock Island Boat Club, and Plaintiff Ames

reasserts the arguments she made in response to the Rock Island Boat Club's Motion in Limine as to Mr. Rehberg's testimony on this point.  For the reasons stated above, Tri-Cove's request is granted in part and denied in part.

### CONCLUSION

As explained further in this Order & Opinion, Plaintiffs' Motion in Limine (Doc. 102) is GRANTED, Defendant Rock Island Boat Club's Amended Motion in Limine (Doc. 101) is GRANTED IN PART and DENIED IN PART, Defendant Rock Island Boat Club's Motion in Limine (Doc. 109) is DENIED AS MOOT, and Defendant Tri-Cove's Motion in Limine (Doc. 103) is GRANTED IN PART and DENIED IN PART.


IT IS SO ORDERED.

Entered this 10th day of August, 2010.


                      s/ Joe B. McDade
                      JOE BILLY McDADE
            United States Senior District Judge